FILED

2014 Sep-16  AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **GREGORY JOHN KATOPODIS,** | ] | |
| | ] | **Case No. 2:12-cv-8047-KOB-TMP** |
| **Defendant/Movant.** | ] | **2:08-cr-418-KOB-TMP** |
| | ] | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant Gregory John Katopodis' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] (Cv. Doc. 1).[2] A jury convicted Katopodis of mail and wire fraud for swindling money from the charity Computer Help for Kids ("CHK") between 2002 and 2007 and using the money for his own personal gain. Katopodis argues primarily that he received ineffective assistance of counsel at trial, that the prosecution intentionally offered false evidence at trial, that the prosecution suppressed evidence, and that the prosecution tainted the trial with unfair publicity. Katopodis also argues that he is entitled to an evidentiary hearing on his claims. The court has interpreted Katopodis' claims liberally because he is not represented by counsel on his §2255 claim. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000). After reviewing Katopodis' filings, the court finds that his arguments are without merit.

---

[1] "A prisoner . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

[2] Documents from Katopodis' criminal trial are designated Cr. Doc. __. Documents from Katopodis' § 2255 action are designated Cv. Doc. __.

Thus, the court **DENIES** Katopodis' motion for a new trial.

I.      **Background**

Gregory John Katopodis founded CHK, a charity that distributed refurbished computers to children in Jefferson County, Alabama. (Cr. Doc. 86, 211, 213). CHK received most of its support from the Jefferson County government. (Cr. Doc. 86, 256). Katopodis controlled CHK's finances and spent CHK funds on personal expenses. (Cr. Doc. 86, 259; Cr. Doc. 88, 78). Katopodis was indicted for traditional and honest services mail and wire fraud. (Cr. Doc. 2). The indictment charged that he defrauded CHK and Jefferson County. (Cr. Doc. 2).

At trial, Samuel McCord and James Parkman represented Katopodis. The jury found Katopodis guilty at trial, (Cr. Doc. 92, 18), and the court sentenced him to 46 months imprisonment and 36 months supervised release. (Cr. Doc. 101).

On appeal, Rita Briles represented Katopodis. The Eleventh Circuit upheld his conviction. *See United States v. Katopodis*, 428 Fed. App'x. 902, 904 (11th Cir. 2011). The Supreme Court denied his petition for certiorari. *See Katopodis v. United States*, 132 S. Ct. 530 (U.S. Oct. 31, 2011).

Katopodis subsequently filed a § 2255 motion with the court on October 31, 2012, two days before his scheduled release date of November 2, 2012. (Cv. Doc. 1). After preliminary review, the court ordered the Government to show cause why the court should not grant Katopodis' motion. (Cv. Doc. 3). The Government responded on November 29, 2012. (Cv. Doc. 6). The court then found the case ready for summary disposition and ordered Katopodis to submit any additional evidence within twenty days. (Cv. Doc. 8). Katopodis filed a sur-reply to the Government's November 29, 2012 response (Cv. Doc. 10) and asked for additional time to

2

provide other evidence. (Cv. Doc. 11). The court gave Katopodis two extensions. (Cv. Doc. 12; Cv. Doc. 16). Katopodis filed two additional responses. (Cv. Doc. 14; Cv. Doc. 17). The matter is now ripe for resolution.

## II.    Analysis

Gregory John Katopodis argues he is entitled to a new trial for four main reasons. First, Katopodis argues that his attorneys were ineffective, but he fails to show how their performance was deficient or how different actions by his attorneys would have changed the outcome of his trial. Second, Katopodis argues that the Government intentionally offered false testimony and evidence, but he fails to explain why he did not raise this issue at trial and fails to show that the allegedly false testimony and evidence would have changed the outcome of his trial. Third, Katopodis argues that the Government suppressed favorable evidence, but all the evidence he argues was suppressed was available to him. Finally, Katopodis argues that the Government tainted the trial with publicity, but he fails to explain why he did not raise this issue at trial and fails to show that any juror was influenced by publicity.

### A.    Ineffective Assistance of Counsel

Katopodis argues that he is due a new trial because his attorneys provided ineffective assistance of counsel at trial and on appeal. (Cv. Doc. 1, 5). This claim has no merit.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Katopodis must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, *and* (2) that he suffered prejudice as a result of that deficient performance. *See Strickland*, 466 U.S. at 684-91.

3

Deficient performance exists when counsel acts "outside the wide range of professionally competent assistance." *Id.* at 690. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The only question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.* Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690.

Prejudice exists if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for [Katopodis] to show that the error had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

All of Katopodis' counsel performed effectively by meeting, at the least, the minimum standard of reasonableness and any minor errors did not prejudice him.

### 1.     Samuel McCord

Katopodis argues that attorney Samuel McCord was ineffective at trial because the case "went much beyond his expertise." (Cv. Doc. 1, 5). However, Katopodis does not identify specific acts or omissions that show how McCord's lack of expertise affected the trial. *See Strickland*, 466 U.S. at 690. Further, McCord played a secondary role at trial and was supported by James Parkman, an experienced criminal defense attorney.

Katopodis argues that McCord exhibited "alcoholic/substance abuse behaviors." (Cv. Doc. 1, 5). Even if McCord did suffer from addiction during trial, which the court expressly states it did not observe, addiction alone is insufficient to render an attorney's performance insufficient. *See Kelly v. United States*, 820 F.2d 1173, 1175 (11th Cir. 1987) (holding that drug

4

addiction does not create deficient performance under *Strickland* when no specific evidence exists that attorney's drug addiction "impaired his actual conduct at trial").

Katopodis argues that McCord was "tardy or absent for meetings," "failed to interview or meet with . . . witnesses," and was disorganized and unprepared during trial. (Cv. Doc. 1, 6; Cv. Doc. 17, 30). These claims fail because they lack specificity. *See Strickland*, 466 U.S. at 690. Further, Katopodis does not explain how these actions prejudiced his trial. If McCord arrived earlier, prepared more, and was more organized, such preferred conduct may have had some conceivable effect on the trial, but Katopodis does not explain how these actions would have changed the outcome, especially because the evidence of Katopodis' guilt was "overwhelming." (*See* Cr. Doc. 114, 102).

Katopodis argues that McCord's failure to interview and notice CPA Steve Richardson as an expert witness was ineffective assistance. (Cv. Doc. 1, 6). According to Katopodis, Richardson would have testified about the financial practices of small non-profits, Katopodis' performance at CHK, and Katopodis' proper compensation. (Cv. Doc. 1, 6). How to use and examine witnesses at trial is a strategic decision and does not constitute ineffective assistance. *See Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 245-46 (11th Cir. 2010); *Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Further, even a failure to *interview* a potential witness is not *per se* prejudicial. *See Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (holding that attorney's failure to interview murder eyewitness did not create prejudice under *Strickland* because witness's testimony likely would not have changed the outcome at trial). Finally, the court did allow Richardson to testify about CHK's financial documents and the court noted that other areas of his

testimony were of questionable admissibility. (Cr. Doc. 90, 41).

Katopodis argues that McCord should have prepared and "encouraged" Katopodis to testify in place of Richardson. (Cv. Doc. 1, 6). This decision was strategic and did not constitute ineffective assistance. *See Fuqua*, 409 F. App'x at 246 (finding that decisions about how to use witnesses are strategic and not grounds for ineffective assistance); *see Strickland*, 466 U.S. at 689. Further, Katopodis could not have qualified as an "expert" in Richardson's place because Katopodis admits he has no accounting background. (Cv. Doc. 17, 2, 3, 11-12).

Katopodis argues that McCord "directed [him] to go to the home of a witness to aid the process server, resulting in an eleven month enhancement in defendant's sentence for obstruction of justice." (Cv. Doc. 1, 6).  McCord admitted that he directed Katopodis to aid the process server. (Cr. Doc. 93, 7-8). This instruction from McCord is not ineffective assistance, however.

First, McCord's instruction was not deficient performance. McCord sent his son to serve a subpoena on witness Carol Smitherman at her residence during trial. (Cr. Doc. 93, 7). McCord receive a call from his son that the police had come to the residence because of a disturbance. (Cr. Doc. 93, 7). McCord states that he "called defendant John Katopodis . . . and asked him if he wouldn't mind going by, I simply could not do it. If [this was] a problem . . . that would be my fault and not Dr. Katopodis' fault." (Cr. Doc. 93, 7). Katopodis went to the residence. (Cr. Doc. 114, 12). At the sentencing, the court spent the bulk of the hearing determining what *subsequently* happened. (Cr. Doc. 114, 12-77). The court heard two competing versions of events, one where Katopodis acted reasonably and one where he acted unreasonably. (Cr. Doc. 114, 12-77).

Katopodis focuses on McCord's admission that his instruction *to go to the residence* was

6

faulty. However, a difference exists between going by the residence to check on McCord's son's attempt to serve process and obstructing justice by "threatening, intimidating, or otherwise unlawfully influencing a . . . witness." U.S.S.G. § 3C1.1, cmt. 4(A). McCord did not instruct Katopodis to "become loud, boisterous, uncontrollable, and confrontational;" to take photos of Smitherman's house; to insult Smitherman's daughter; or to invade the personal space of others at the residence, as Smitherman's daughter testified Katopodis did. (Cr. Doc. 93, Ex. 1). Katopodis admits that McCord sent him "for no other purpose than to 'speak to the police officer.'"(Cv. Doc. 10, 2). Any other actions were not at McCord's instruction.

Further, even if McCord's instruction were deficient performance, it did not have any prejudicial effect on Katopodis' sentence. The court accepted the prosecution's position that Katopodis obstructed justice but also explicitly found it would have imposed the same sentence anyway. (Cr. Doc. 114, 107 ("[T]he sentence [] imposed is a reasonable one in light of the guidelines and the factors at 18 U.S.C. Section 3553(a) and, therefore, [the court] concludes that the sentence imposed would have been the same regardless of how guideline issues had been resolve on either side.")). Thus, the sentence would have been the same even if the court had found in Katopodis' favor because the sentence was reasonable in light of all the § 3553(a) factors.

Katopodis argues that McCord "induced [him] to hire [McCord's] close friend, J. Stephen Salter" while knowing that Salter could not perform adequately because of substance abuse problems. (Cv. Doc. 1, 6). Any inducement to hire Salter, even if factual, does not show that

*McCord's* performance was deficient.[3] Katopodis argues that McCord's inducement to engage Salter caused a delay in hiring Parkman. However, the right to counsel includes the right of a defendant to choose his own attorney unless he cannot afford one. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Katopodis first chose Salter and cannot complain that his choice delayed hiring Parkman.

Katopodis argues that McCord's services were expensive. (Cv. Doc. 1, 7). Cost is irrelevant to McCord's performance and whether his action's prejudiced the outcome of trial. *See Strickland*, 466 U.S. at 690.

Katopodis argues that McCord compelled him to testify to the grand jury. (Cv. Doc. 10, 1-2). However, Katopodis also states that McCord told him not to testify. (Cv. Doc. 17, 25 ("Before entering the Grand Jury room, Mr. McCord handed me two documents . . . The other was a letter advising me not to testify before the Grand Jury room, signed by him in contradiction of his advice the day before.")). McCord disputed at the bond hearing that he ever instructed Katopodis to testify. (Cr. Doc. 93, 4). This contradictory allegation is without merit.

In summary, Katopodis has not shown that he received ineffective assistance of counsel from McCord.

### 2.    James Parkman

Katopodis argues that Parkman was ineffective at trial because "he only had two weeks preparation time to work on the case." (Cv. Doc. 1, 5). Katopodis concedes that the lateness of

---

[3]If Katopodis claims that Salter provided ineffective assistance, addiction alone is insufficient to render an attorney's performance insufficient. *See Kelly*, 820 F.2d at 1175. Further, the court expressly states that it has no basis to believe that Salter suffers any ill effects from addiction. Finally, Salter played only a minor role in this case and his actions did not affect the outcome of trial.

his appointment contributed to Parkman's ability to prepare. (Cv. Doc. 1, 7) ("By the time Parkman was engaged, he was, in fairness, at a considerable disadvantage."). Mere lack of preparation time is not ineffective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648, 661 (1984) (finding fact that attorney only had twenty five days to prepare defense of fraud case when the Government had investigated defendant for over four years was not sufficient alone to render assistance ineffective); *see United States v. Mills*, 760 F. 2d 1116, 1122 n. 8 (11th Cir. 1985) (finding no presumption of ineffective assistance when attorney had one day to prepare defense when prior counsel provided "essential information necessary to try the case" to new counsel).

Katopodis argues that Parkman did not review over 750,000 documents. (Cv. Doc. 1, 5). This claim lacks specificity and Katopodis does not explain how review of all these documents would materially change the outcome of his trial. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Katopodis argues that Parkman did not prepare pre-trial motions. However, before trial, Parkman filed a motion to continue (Cv. Doc. 33), a motion for disclosure under Rule 404(b) (Cv. Doc. 34), a motion for discovery (Cv. Doc. 37), a motion for leave to submit a jury questionnaire (Cv. Doc. 38), and a motions in limine (Cv. Doc. 42). The record discloses that this allegation is without merit.

Katopodis argues that Parkman failed to interview defense witnesses, failed to remedy McCord's failure to notice CPA Steve Richardson as an expert witness, and failed to prepare Katopodis to testify at trial in Richardson's place. Parkman made these strategic decisions, which did not constitute ineffective assistance. *See Fuqua*, 409 F. App'x at 246; *see Strickland*, 466

U.S. at 689. Further, Katopodis could not have qualified as an "expert" in Richardson's place anyway. (Cv. Doc. 17, 2, 3, 11-12).

Katopodis argues a personal bankruptcy filed two weeks before trial distracted Parkman. An allegation that an attorney's personal issues rendered him unable to provide effective assistance is insufficient without a statement of what specific actions counsel failed to take. *See Doorbal v. McNeil*, 08-21566-CIV-GOLD, 2008 WL 4194838, at *34 (S.D. Fla. Sept. 10, 2008) *aff'd sub nom. Doorbal v. Dep't of Corr.*, 572 F.3d 1222, 1222 (11th Cir. 2009) (holding that the death of counsel's father and illness of counsel's mother immediately before trial, without more, is insufficient to establish ineffective assistance).

Katopodis argues that Parkman's services were expensive. (Cv. Doc. 1, 7). Cost is irrelevant to Parkman's performance and whether his action's prejudiced the outcome of trial. *See Strickland*, 466 U.S. at 690.

Katopodis argues that Parkman was distracted by other cases that were more lucrative. (Cv. Doc. 10, 2). A "mere conclusory assertion that an attorney has a heavy caseload, without specification of any particular error, does not support a claim of ineffective assistance of counsel." *Grant v. Warden, Louisiana State Penitentiary*, 09-CV-0436, 2012 WL 3526832, *6 (W.D. La. July 12, 2012) *report and recommendation adopted sub nom. Grant v. Cain*, CIV.A. 09-0436, 2012 WL 3526974, *1 (W.D. La. Aug. 14, 2012).

Katopodis argues that Parkman violated the "Tjoflat rule" when he withdrew from the case to "cut his losses" and that Parkman "presented a false picture to Judge Putnam" at the evidentiary hearing on Katopodis' motion to appoint counsel on appeal. (Cv. Doc. 1, 7). The Eleventh Circuit's version of the Tjoflat rule is contained in the Eleventh Circuit Plan Under the

10

Criminal Justice Act. It provides:

> Retained counsel for a criminal defendant has an obligation to continue to represent that defendant *until successor counsel either enters an appearance or is appointed under the Act*, and may not abandon or cease representation of a defendant *except upon order of this court*. Unless approved in advance by this court, the district court is not authorized to appoint counsel on appeal to represent a defendant who was represented in the district court by retained counsel without first conducting an in camera review of the financial circumstances of the defendant and of the fee arrangements between the defendant and retained trial counsel.

11th Cir. R., Add. 4 § d(2) (emphasis added). The court, through Magistrate Judge Putnam, held a hearing on October 30, 2009 to determine whether Katopodis' trial counsel should continue to represent him on appeal. (Cr. Doc. 128). The court found that Katopodis could not pay Parkman for his work at trial or for additional work on appeal. (Cr. Doc. 128, 3-6, 8). Parkman offered to assist with the transition to new counsel. (Cr. Doc. 128, 9-10). The court then appointed new counsel. (Cr. Doc. 72, 2). Attorney Rita Briles entered an appearance on November 2, 2009. (Cr. Doc. 71). The court granted Parkman's motion to withdraw on November 2, 2009. (Cr. Doc. 72). Parkman did not violate the Tjoflat rule because Katopodis did not pay Parkman in full for his services, the court appointed new counsel, and the court gave Parkman leave to withdraw. Further, no evidence supports Katopodis' allegation that Parkman lied to the court.

Katopodis argues that Parkman should have filed "pre-trial motions to attack the constitutionality of the theft of honest services charges." (Cv. Doc. 1, 5). First, Parkman's failure to challenge the honest services charge was not deficient performance. "In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001). To effectively represent Katopodis, Parkman was not required to

anticipate the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358, 358 (2010).

Further, the Eleventh Circuit considered the effect of *Skilling* on Katopodis' conviction and held that "Katopodis' argument that the prosecution's case mainly was about honest services is unpersuasive. Katopodis has not shown a reasonable probability that, without the court's improper instruction about honest services fraud, he would not have been found guilty of traditional money or property fraud; instead, his claims are speculative." *United States v. Katopodis*, 428 Fed. App'x. 902, 904 (11th Cir. 2011). Thus, Parkman's failure to file a constitutional challenge to the honest services charge did not prejudice Katopodis.

In summary, Katopodis received effective assistance of counsel from Parkman.[4]

### 3. Rita Briles

Katopodis argues that Briles was ineffective because she failed to make the court aware of "critical information about the perjury of prosecution witness Carole Smitherman." (Cv. Doc. 1, 7). As with trial counsel, Briles merely had to provide reasonably effective assistance on appeal. Briles is not required to exhaust every lead, no matter how implausible or unlikely to bear fruit. *See Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000). Briles chose to focus her efforts on more effective defenses rather than making an argument of questionable value from a hostile witness.

In summary, Katopodis was ably represented at trial and on appeal by effective counsel. None of Katopodis' claims show a lack of effective performance by his attorneys or how any

---

[4]Though he argues ineffective assistance, in the same submission Katopodis praises Parkman in his filings. (*E.g.* Cv. Doc. 17, 29-30 ("The highpoint in the trial was Jim Parkman's cross examination of each government witness. In every case, he dismantled their testimony and left reasonable doubt about what each witness had testified.")).

deficient actions by his attorneys would have changed his conviction. Thus, his ineffective assistance of counsel claim lacks merit and fails.

### B.    Intentional Presentation of Perjured Testimony and False Evidence

Katopodis argues that he is due a new trial because the prosecution "encouraged perjury by witnesses" and "tamper[ed] with evidence." (Cv. Doc. 1, 8). Katopodis claims that the prosecution knowingly presented perjured testimony from Carol Smitherman and presented an altered email to the court. (Cv. Doc. 1, 8-9). This claim is both partially procedurally defaulted and has no merit.

First, the claim that the prosecution submitted an altered document is procedurally defaulted. The procedural default doctrine reflects the general rule that claims not raised on direct appeal may not be raised on collateral review. *See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). Generally, federal courts will not review a procedurally defaulted claim unless the defendant can show either (1) cause for the default *and* actual prejudice from the error, *or* (2) that the court's failure to consider the claim will result in a miscarriage of justice because the defendant is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *see United States v. Frady*, 456 U.S. 152, 167 (1982).

Katopodis did not raise this claim on direct appeal. While Katopodis states he did not have access to the information necessary to prove this claim, the email in question was both discussed during jury selection (Cr. Doc. 85, 78, 137-139) and was submitted as an exhibit at the post-trial bond hearing (Cr. Doc. 93, Ex. 2). If the document was altered, Katopodis should have raised a claim at trial and has shown no credible reason for his failure to do so. Further, the jury did not see the email and, thus, it could not have prejudiced Katopodis. Finally, nothing indicates

13

that Katopodis is actually innocent. The court found "overwhelming" evidence of Katopodis'

guilt, (Cr. Doc. 114, 102), and the Eleventh Circuit agreed. *See United States v. Katopodis*, 428

Fed. App'x. at 904.

Second, Katopodis' argument that the prosecution submitted perjured testimony and an

altered email has no merit. To receive a new trial based on the knowing use of false information,

Katopodis must show that "(1) the contested statements were actually false, (2) the government

knew the statements to be false; and (3) the statements were material." *United States v. Clarke*,

442 F. App'x 540, 543-44 (11th Cir. 2011). Here, even if the prosecution knowingly presented an

altered email the submission was not material because it was submitted after the jury rendered its

verdict. (Cr. Doc. 93, 11).

Further, Katopodis' "proof" of Smitherman's alleged perjury is a single one line email

from Katopodis to Smitherman and her secretary. (Cv. Doc. 14, 39). Even if this evidence did

refute Smitherman's testimony that "I don't do e-mails, Sir!," as Katopodis suggests (Cv. Doc.

14, 2), it does not overturn the "overwhelming" weight of the evidence. (Cr. Doc. 114, 102).

In summary Katopodis's claim that the prosecution presented false evidence is partially

procedurally barred and completely without merit.

### C.     Suppression of Exculpatory Evidence

Katopodis argues that he deserves a new trial because the prosecution suppressed

evidence by withholding FBI surveys, FBI interviews, and access to Katopodis' hard drive. (Cv.

Doc. 1, 8, 9). This claim also lacks merit.

"[S]uppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective

14

of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To

show a *Brady* violation, Katopodis must establish

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different.

*United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1994) (applying "four-prong test to decide

whether a new trial is required because of a *Brady* violation").

Katopodis argues that the prosecution withheld FBI surveys that favorably showed the

entities that received CHK computers. (Cv. Doc. 1, 8). This claim fails prongs two and four of

the test to show a *Brady* violation as explained in *Newton.* First, while Katopodis did not have

the results of the survey, he did have a copy of the survey and the names of those who received

the survey. With reasonable diligence, he could have obtained the same information by

contacting those who received the survey and asking the same questions. Second, no reasonable

probability exists that access to the survey answers would have changed the result at trial because

Katopodis put on other evidence of entities that received CHK computers. (Cr. Doc. 89, 239-46).

The survey results were also irrelevant to the jury's verdict because Katopodis' trial was about

his theft of CHK funds, not whether CHK actually distributed computers.

Katopodis also argues that the prosecution withheld interviews with "a representative of

the Greater Birmingham Foundation" and "statements of independent contractors" of CHK. (Cv.

Doc. 1, 8). The prosecution made all interviews available. (Cv. Doc. 6-1, 2). No suppression

exists.

Katopodis argues that the prosecution "intentionally retained . . . a consolidated computer external hard drive" belonging to Katopodis and encrypted the data so he could not access it. (Cv. Doc. 1, 9). The prosecution made available a copy of the hard drive to Katopodis and provided the password necessary to access the hard drive. (Cv. Doc. 6-1, 2; Cv. Doc. 6-2, 1). No suppression exists.

In summary, Katopodis is not entitled to a new trial based on his argument that the prosecution suppressed evidence because Katopodis had access to all the evidence he claims was suppressed and the evidence would not have changed the outcome of his trial.

### D.      Prosecutorial Tainting

Katopodis argues that he deserves a new trial because the prosecution tainted the trial with publicity. Katopodis claims that the October 31, 2008 press conference held to announce his indictment and arrest tainted the jury pool and witnesses. (Cv. Doc. 1, 10). Further, he claims that the prosecution leaked information to the press, including information about Marc Anthony Donais' involvement with CHK and his history in the adult film industry, which undermined the fairness of his trial. (Cv. Doc. 1, 8). This claim is both procedurally defaulted and has no merit.

First, this claim is procedurally defaulted. Katopodis failed to raise this claim at trial. Katopodis has offered no cause why he failed to raise this issue previously. Second, no prejudice exists. Katopodis admits that jurors were shielded from publicity. (Cv. Doc. 1, 10). While Katopodis states that two witnesses have contacted him since trial and said that trial publicity influenced their testimony, he offers no specifics about which witnesses were influenced or how this influence would change the outcome of his trial. Finally, nothing indicates that Katopodis is actually innocent. The court found "overwhelming" evidence of Katopodis' guilt at trial. (Cr.

16

Doc. 114, 102).

Second, this claim has no merit. To show unfairness because of trial publicity, Katopodis must establish that the pretrial publicity and other events surrounding his trial resulted in either actual or presumed prejudice. *See United States v. Langford*, 647 F.3d 1309, 1332 (11th Cir. 2011). Actual prejudice exists when jurors believed the defendant was guilty before trial and could not set their prejudice aside and render a verdict based on the evidence presented. *Id*. Presumed prejudice exists when trial publicity is prejudicial and inflammatory and the publicity saturated the community in which the trial was held. *Id*.

Katopodis cannot show actual prejudice. Katopodis admits that jurors were shielded from publicity during trial. (Cv. Doc. 1, 10). Instead he focuses his complaint on influence over unspecified *witnesses*. *Id.* This claim is insufficient because he does not show how any *juror* was tainted. *See United States v. De La Vega*, 913 F.2d 861, 864 (11th Cir. 1990).The Sixth Amendment provides for trial by a fair and impartial jury. Potential *witness* tainting is irrelevant.

Further, Katopodis cannot show presumed prejudice. Though this trial was a high profile trial of a local politician, no evidence exists in the record that news coverage was sensational. *See Id.* at 865 (finding several hundred factual news reports before trial insufficient to create presumed prejudice). The claim that the prosecution "made additional false and misleading statements" and that "highly charged slander by anonymous bloggers" influenced *witnesses*, without any more specifics, is not presumed prejudice.

### E.    Appointment of Counsel for Evidentiary Hearing

Finally, Katopodis argues that the "request for and consideration of such 'evidence' by the Court constitutes a ***de facto*** evidentiary hearing which requires that [he] be given appointed

17

counsel." (Cv. Doc. 17, 2). In a § 2255 case, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Katopodis' factual allegations and evidence are largely vague, refuted by the record, and repetitive of the issues litigated at trial and argued on appeal. Further, Katopodis repeatedly states that he *will provide* additional documents but the time to provide documents is long past. (*E.g.* Cv. Doc. 17, 4 ("I *will submit* the affidavit of Lt. Pohnel who was a critical witness at trial with great credibility." (emphasis added))). The record is clear and is before the court. No need exists to appoint counsel for an evidentiary hearing that would serve no valid purpose.

## III.    Conclusion

In summary, Defendant Gregory John Katopodis' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is without merit. Katopodis has failed to establish that he deserves a new trial or any other relief based on any of his claims Thus, the court **DENIES** Katopodis' motion.

DONE and ORDERED this 16th day of September, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE